11cv0375a-ord(jurisdiction).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| C.B. FLEET COMPANY, INC., | : | |
| Plaintiff, | : | |
| | : | Case No. 1:11-CV-0375 |
| v. | : | |
| COLONY SPECIALTY INSURANCE CO., | : | JUDGE DAN AARON POLSTER |
| Defendant | : | **MEMORANDUM AND ORDER** |

Plaintiff C.B. Fleet Company ("Fleet") purchased a product liability insurance policy from Colony Specialty Insurance Company ("Colony"). In this action, Fleet alleges Colony refused to pay for certain claims covered by this policy; Fleet brings claims for breach of contract, bad faith refusal to pay, and declaratory relief.

Colony responded to Fleet's complaint with a motion to dismiss for lack of federal diversity jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) (docket no. 11). In reply, Fleet argues the Court should either: (1) deny the motion, because diversity jurisdiction does exist; or (2) allow limited jurisdictional discovery before ruling on the merits.

For the reasons and to the extent stated below, the Court concludes jurisdictional discovery is appropriate. Accordingly, the Court rules as follows:

• Fleet shall pursue limited jurisdictional discovery, as described further below, to be completed by June 10, 2011;

• Fleet shall file a supplemental brief in response to Colony's motion to dismiss on June 20, 2011; and

- Colony shall file a supplemental reply in support of its motion to dismiss on July 1, 2011.

\* \* \* \* \*

In its complaint, Fleet alleges that: (1) Fleet is a Virginia corporation with is principal place of business in Lynchburg, Virginia; (2) Colony is an Ohio corporation with its principal place of business in Columbus, Ohio; and (3) therefore, federal diversity jurisdiction exists. In its motion to dismiss, Colony agrees with Fleet's allegation that Colony is an Ohio Corporation, but asserts its principal place of business is in Richmond Virginia, so the parties are not diverse. In support of this assertion, Colony offers the affidavit of its Senior Vice President, Sam Anderson, who avers, *inter alia*, that Colony's corporate headquarters are in Richmond, Virginia, where: (1) corporate books and records are maintained; (2) human resources employees are located; (3) many underwriting and claims employees report to work; (4) all information technology personnel are employed; and (5) general daily managerial decision-making occurs. Colony also asserts it is a wholly-owned subsidiary of Colony Insurance Company, which is headquartered in Virginia.

Fleet responds by observing that, in 2008, Colony filed a notice of removal in another federal case and asserted that Colony "is an Ohio corporation <u>with its principle [sic] place of business in Ohio</u>" (emphasis added). Fleet insists Colony should be bound by this assertion, and notes Colony has not adduced any evidence suggesting it since did anything to change the location of its principal place of business. Fleet also notes that several of Mr. Anderson's averments are irrelevant – for example, the fact that many of Colony's underwriting and claims employees report to work in Richmond has no bearing on the test for where a company's principal place of business is located.

The Supreme Court recently explained the test that courts must use to determine the location of a company's principal place of business. In *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010), the Court

"conclude[d] that [the phrase] 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. *Id.* at 1192. The Court explained:

> It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Id.* Thus, a corporation's nerve center is not necessarily the same place where "the bulk of a company's business activities visible to the public" occurs, nor where it has the most plants, sales locations, or employees. *Id.* at 1194. Rather, it is where the preponderance of the company's "command and coordinating functions" occurs. *Id.* (recognizing that these functions may be divided "among officers who work at several different locations," but that the "test nonetheless points courts in a single direction, towards the center of overall direction, control, and coordination").

The *Hertz* court also reaffirmed that "[t]he burden of persuasion for establishing diversity jurisdiction . . . remains on the party asserting it" – in this case, Fleet. *Id.* Fleet does not carry this burden simply by showing that, three years before it filed this case, Colony stated its principal place of business is in Ohio. Rather, "[t]he Court's concern is whether Defendants' alleged new principal place of business is in fact its principal place of business, as defined by the Supreme Court in *Hertz*." *In re Hydroxycut Marketing and Sales Practices Litig.*, 2010 WL 2998855 (S.D. Cal. July 29, 2010); *see id.* ("Defendants' earlier representations about their principal place of business [are] not controlling. The test is where [the defendants'] principal place of business was at the time the case was filed on January 22, 2010. Defendants' motivation for moving their principal place of business is immaterial."). Nor does Fleet carry its burden by observing that many of Colony's officers reside in Texas. This observation may negate

3

Colony's argument that its "nerve center" is in Virginia, but it does not support Fleet's assertion that Colony's "nerve center" is in Ohio.[1]

Further, just as Fleet's arguments are not persuasive, many of Colony's arguments are off-point. For example, Mr. Anderson's averment that many of Colony's underwriting and claims employees report to work in Richmond, Virginia lends virtually no support to its assertion that Richmond is Colony's nerve center. And Fleet is correct that the principal place of business of Colony is independent from that of its corporate parent. *Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d 279, 283-84 (6th Cir. 1990) ("federal court jurisdiction over the subsidiary is determined by that corporation's citizenship, not the citizenship of the parent").

In sum, the evidence relevant to the question of whether diversity jurisdiction exists is currently too sketchy for the Court to make an informed ruling. The Sixth Circuit Court of Appeals has "stress[ed] that a party must be given an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988) (internal quotation marks omitted). A district court "has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction," and has considerable discretion in devising the procedure to inquire into the existence of jurisdiction." *Id.*

Ultimately, this Court concludes that: (1) on the current record, Fleet has not carried its burden of showing that Colony's principal place of business is in Ohio, as it alleges; and (2) Fleet should be permitted limited discovery to shoulder this burden. Accordingly, the Court rules as follows regarding jurisdictional discovery:

---

[1] It is possible the discovery authorized by this Order will show that: (1) Fleet's allegation that Colony's principal place of business is located in Ohio was incorrect; and (2) the parties are nonetheless diverse, because Colony's principal place of business is located in (for example) Texas and not Virginia. If so, the parties should address in their supplemental briefs whether this case may remain with this Court.

- Within 7 calendar days of the date of this Order, Colony shall produce to Fleet organizational charts showing the hierarchy of, positions held by, and location of Colony's high-level officers.

- As requested at pages 12-13 of its response brief, Fleet shall be permitted to take the deposition duces tecum of a <u>single</u> Colony corporate representative, pursuant to Fed. R. Civ. P. 30(b)(6), to inquire into the place(s) where Colony's officers direct, control, and coordinate the corporation's activities.

**IT IS SO ORDERED.**

<u>/s/ Dan Aaron Polster</u>
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**DATED**: May 10, 2011