11cv0375d-ord(compel).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| C.B. FLEET COMPANY, INC., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 1:11-CV-0375** |
| **v.** | : | |
| | : | |
| COLONY SPECIALTY INSURANCE CO., | : | **JUDGE DAN AARON POLSTER** |
| | : | |
| **Defendant** | : | **MEMORANDUM AND ORDER** |

With this case, plaintiff C.B. Fleet Company ("Fleet") brings a breach of contract action against Colony Specialty Insurance Company ("Colony").  In its second amended complaint, Fleet asserts it purchased an insurance policy from Colony, and Colony is in breach because it has refused to pay covered claims.  Fleet also asks for a declaratory judgment that Colony is obligated to pay certain claims, and asserts an additional claim for bad faith refusal to pay.

Currently pending is Fleet's motion to compel discovery (docket no. 38).  For the reasons stated below, this motion is **GRANTED in part**.  Colony shall produce certain documents to Fleet, and certain documents to the Special Master for in camera review, as explained in Section V of this opinion.  Further, Fleet's motion to strike Colony's sur-reply brief is **DENIED as moot**.

## I.

Fleet alleges it purchased from Colony an excess insurance policy to cover, among other things, "claims made during the period from August 1, 2007 through August 1, 2008 arising out of any injuries allegedly caused by the ingestion of Fleet Phospho-Soda."  Second Amended Complaint at ¶6.  In October of 2007, Fleet was served with a Canadian class action lawsuit, known as the "*Quinton* matter," which

"demanded damages in the amount of $1,000,000 for each person in Canada who sustained bodily injury caused by the ingestion of Phospho-soda." *Id.* at ¶23. Fleet settled the *Quinton* matter and asserts that "Colony is obligated under its policy to pay a portion of the settlement and to provide Fleet with coverage for all products liability claims first made during the 2007-2008 period as provided by the Colony Policy." *Id.* at ¶27. Fleet concludes, however, that, "in violation of its clear obligations under its Policy and applicable law, Colony, assisted by its agents, including its attorneys, unreasonably refused to make such payments and unreasonably refused to provide Fleet with products liability coverage as required by its policy." *Id.* at ¶28.

On July 20, 2012, Fleet served upon Colony its First Set of Document Requests. Among other documents, Fleet sought information regarding Colony's investigation of the Canadian Phospho-soda claims made against Fleet. For example, Fleet sought: (1) Colony's claims file; and (2) any coverage analyses prepared by or for Colony. In response, Colony invoked both attorney-client privilege and the work product doctrine, and withheld numerous documents. *See* docket no. 39, exh. 9 (Fleet's privilege log, listing about 125 documents). Fleet objected to this non-production, and the parties traded letters arguing the matter.

Then, on September 27, 2012, pursuant to Local Rule 37.1, Fleet wrote a letter to the Court asking for assistance with this discovery dispute. Colony responded with its own letter on October 1, 2012. The Court held a teleconference on October 3, 2012, at which time Colony made clear it was not invoking advice of counsel as a defense. The Court then issued a ruling on October 3, 2012, stating that "Fleet's request for an Order directing Colony to produce documents that Colony has identified as privileged is denied *at this time*." Docket no. 30 at 1 (emphasis added). The Court also set imminent dates for briefing of summary judgment motions, as well as a settlement conference to occur on November 9, 2012. The Court's hope was that it would not have to re-visit the privilege / work-product issues, because the case

2

would resolve through summary judgment or settlement.

Unfortunately, resolution of the dispute did not occur – the Court denied the parties' cross-motions for summary judgment because material facts remained in dispute, *see* docket no. 36, and the parties were unable to reach settlement.  Accordingly, the Court set a formal briefing schedule to address the privilege and work-product issues, and trial has been set for June 17, 2013.  In reaching the instant decision, the Court has considered the parties' briefs, *see* docket nos. 38-47, as well as their earlier letters.


II.

The threshold issue raised by Fleet's motion to compel is which State's law applies to the question of attorney-client privilege.  Fleet asserts it is Ohio law; Colony asserts it is the law of either Georgia or Pennsylvania.  The Court concludes Fleet is correct.

A federal court sitting in diversity jurisdiction applies "the choice of law rules of the state in which it sits." *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941).  Therefore, Ohio's choice-of-law rules determine which law controls Colony's assertion of attorney-client privilege.  Ohio has adopted the Restatement (Second) of Conflicts of Law, *Morgan v. Biro*, 474 N.E.2d 286, 288-89 (1984), so Ohio courts apply Restatement §139 to issues regarding attorney-client privilege.  *Woelfling v. Great-West Life Assurance Co.*, 30 Ohio App.2d 211, 221, n.1 (Ohio Ct. App. 1972).

Section 139(2) of the Restatement reads: "Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum [here, Ohio law] *will be admitted* unless there is some special reason why the forum policy favoring admission should not be given effect."  (Emphasis added.)  Thus, documents that would not be privileged under Ohio law will be admitted, absent special circumstances.  Comment (d) to §139(2) lists four factors a Court may consider when determining whether special, countervailing

circumstances exist.  The Court examines these four factors below.

1.    <u>Number and Nature of Contacts Ohio Has with the Parties and the Transaction Involved</u>.

As the Special Master observed in a letter ruling to the parties,[1] Colony is incorporated in Ohio.
Colony sold to Fleet two $10 million excess products liability insurance policies, one each for the years
2006-07 and 2007-08.  These policies covered Fleet products sold in both Canada and the United States,
including Ohio.  Colony's contacts with Ohio are substantial and important, which weighs in favor of
applying Ohio privilege law when it is a party to litigation in an Ohio forum.

Colony argues its incorporation in Ohio is meaningless, as it has no employees in Ohio and simply
"acts as a conduit for a Texas company."  Brief at 5.  It is likely, however, that the State of Ohio views
Colony's incorporation differently, expecting it to file State tax returns, adhere to Ohio law, and so on.
Colony also notes it "is not an admitted insurer in Ohio," and suggests the Ohio Department of Insurance
("ODI") would therefore not regulate it.  *Id.*  This bald assertion seems highly unlikely, since the ODI has
explicitly monitored and approved Colony's incorporation.[2]  Colony ultimately insists it has not "availed
itself of the privilege of doing business [in] and receiving protections from" Ohio.  *Id.*  But this assertion
simply cannot be reconciled with the fact that Colony chose to incorporate in Ohio.  Nor can it be

_____

[1] In its October 3, 2012 Order, the Court referred discovery issues to the Special Master.  Not
realizing the Court had earlier "denied at this time" Fleet's request for an Order directing Colony to
produce privileged documents, the Special Master: (1) addressed the privilege issue, and (2) then later
vacated that analysis, after the parties noted the Court had already ruled.  Now that time has passed, the
case has not resolved, and the Court is examining the question again, the Court has reviewed the Special
Master's analysis.

[2] The website of the Ohio Secretary of State, www.sos.state.oh.us, lists Colony Specialty Insurance
Company as entity number 527694.  Records associated with this entity include a December 10, 2009
letter *from the ODI* to Colony approving a proposed amendment to Colony's articles of incorporation.  *See*
document number 201002100086 at 6.  A January 11, 2010 letter from the Ohio Secretary of State to
Colony approving the proposed amendment specifically notes he first "consulted with the Ohio
Department of Insurance" before granting approval.  *Id.* at 7.

4

reconciled with Colony's own statement, in another federal case, that "Colony Specialty Insurance Company is an Ohio corporation with its principle [sic] place of business in Ohio." *See* docket no. 14, exh. K (¶8, notice of removal filed in *A One Plus Home Heath Care v. Colony Specialty Ins. Co.*, No. 3:08-cv-01550-L (N.D. Tex. 2008)).  Colony's protestations that is has no meaningful contacts with Ohio are not persuasive.

In addition, it cannot be ignored that both Fleet and Colony appeared in front of the undersigned in Ohio several times, in connection with *In re: OSPS Prods. Liab. Litig.*, MDL No. 2066, to address the extent to which *the same Colony insurance policy at issue in this case* provided coverage for claims made against Fleet by American plaintiffs.  In sum, the number and nature of contacts that Ohio has with the parties and the transaction are substantial.

In contrast, Colony notes that the allegedly privileged communications at issue were sent from Colony's counsel in Pennsylvania to "representatives of Colony" in Georgia and Pennsylvania.  *Id.* at 4. It is unclear, however, who these "representatives" are, given that Colony stated in deposition it has no employees.  Further, given that Colony maintains it is a "conduit for a Texas company" and lists a Virginia address on the insurance policy at issue, the Georgia and Pennsylvania contacts appear to be fortuitous.

On the record presented, the first factor weighs strongly in favor of applying Ohio law regarding privilege.

2.    Relative Materiality of the Evidence Sought to Be Excluded.

There can be little doubt that documents assessing whether coverage exists under the Colony policy, and addressing reasons for denying coverage, are highly material to Fleet's claims.  Colony offers an *ipse dixit* assertion that Fleet could obtain the information it seeks through some mechanism other than by obtaining the allegedly privileged documents it has requested, but Colony does not explain in any way

what this other mechanism might be.[3]  This factor also weighs strongly in favor of applying Ohio privilege law.

3.        The Kind of Privilege Involved.

The Special Master observed that the "attorney-client privilege is long-lived, and Courts should be hesitant to allow for exceptions not widely recognized."  The Court agrees.  It is notable, however, that the Ohio Supreme Court: (1) also recognized the attorney-client privilege "has long been recognized by the courts," *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154, 155 (Ohio 2001); and (2) nonetheless, held that "the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage," *id.* at 158.

This factor weighs slightly in favor of applying Georgia or Pennsylvania privilege law.

4.        Fairness to the Parties.

Colony asserts it relied on Georgia's and/or Pennsylvania's rules regarding attorney-client privilege, which do not contain the "insurance bad faith claim exception" recognized by Ohio.  Colony argues, therefore, that it would be unfair for the Court to now apply Ohio's rules.  Although Colony offers no evidence in support of its reliance-assertion, the Court acknowledges Colony may have relied on privilege rules supplied by different States.  But it is hardly unfair for Colony to know, and expect possible application of, the law applicable in the State where it is incorporated and maintains its principal place of business – Ohio.  This is especially true regarding the law set out in *Boone*, which: (a) applies specifically

---

[3] Colony's observation in its sur-reply brief that "Fleet propounded discovery demands that seek the same information (the basis of Colony's coverage position and the extent of its investigation) is circular; it is Colony's invocation of privilege to avoid that very demand that led Fleet to file the instant motion to compel.

to insurance companies, (b) issued from the Ohio Supreme Court, as opposed to an intermediate appellate court, and (c) was announced years before the matters at issue in this case arose.[4]

Raising another fairness argument, Colony notes that: (1) it earlier stated to the Court it was not relying upon the advice-of-counsel defense; (2) the Court then "denied at this time" Fleet's request for an Order directing Colony to produce privileged documents," docket no. 30 at 1; and (3) Colony relied upon the Court's denial when Fleet subsequently deposed two Colony representatives, "continu[ing] not to invoke an advice-of-counsel defense," reply brief at 10.  Colony thus asserts that "[t]o reverse this Court's decision after the conclusion of these depositions would work a fundamental unfairness on Colony." *Id.*

This argument is not well-taken for two reasons.  First, invocation of the advice-of-counsel defense would *mandate* production of the documents at issue, while a privilege analysis requires the Court to examine and determine whether the documents must be produced; the two issues are not coextensive.  That is, Colony's choice not to invoke the advice-of-counsel defense did not *immunize* Colony from Fleet's objections that Colony's claims of attorney-client privilege are not well-taken.  Second, the Court stated the request was denied "at this time," and made clear it would re-examine the request depending on the outcome of potentially case-dispositive pending matters (that is, summary judgment motions and a

---

[4]  The *Boone* opinion was issued in April of 2001, and itself cited to 1994 decision.  *See Boone*, 744 N.E.2d at 156 ("in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, . . . we held that certain attorney-client communications and work-product materials in an insurer's claims file were not protected from discovery by the attorney-client privilege or work-product doctrine").  The earliest document listed on Colony's privilege log was created in November of 2009, with the majority of those documents created in 2011.

settlement conference).[5]

In sum, it is not unfair to any party that Ohio privilege law be applied.  This factor is neutral.

5.    <u>Summary</u>.

In summary, the four factors discussed above weigh in favor of applying Ohio privilege law; the factors do not suggest "there is some special reason why [Ohio law] should not be given effect." Restatement §139(2).  Accordingly, documents that are not privileged under Ohio law must be produced.

III.

As noted above, the Ohio Supreme Court has ruled that, " in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage *that were created prior to the denial of coverage*." *Boone*, 744 N.E.2d at 158 (emphasis added).  The court added that, "[a]t that stage of the claims handling, the claims file materials will not contain work product, i.e., things prepared in anticipation of litigation, because at that point it has not yet been determined whether coverage exists."  *Id.*

This raises the question of what date Colony communicated to Fleet a "denial of coverage."  Fleet submitted to Colony an interrogatory asking for "the date[s] on which [Colony] disclaimed any obligation to provide coverage to Fleet for all (or any) Phospho-soda Claims made against Fleet in Canada." (Interrogatory 2.)   Colony responded it had "conveyed coverage positions" to Fleet in "numerous

---

[5]  It is also notable that, with its sur-reply brief, Colony submitted the affidavit of its "officer and employee" Donna M. Biondich, where she seems to *invoke* the advice-of-counsel defense.  *See* affid. at ¶3 ("I requested and obtained legal advice from William F. Stewart, Esquire, an attorney in Blue Bell, Pennsylvania, prior to making the determination that C.B. Fleet's coverage allocation claims and theories were inconsistent with the Colony policies of insurance.").  Any such invocation, of course, *requires* Colony to produce the documents in question.

communications," including letters dated August 27, 2010, March 7, 2011, and May 15, 2012.  Colony also responded it "formally took an adverse coverage position on the issues now before the Court on July 9, 2010," but added it "did not then (or now) preclude the possibility that some Canadian claim(s) could be covered under the 2007-08 policy year – if the claim(s) satisfied the terms of the insurance contracts."

In none of the communications Colony points to, however, did Colony *deny* coverage – indeed, Colony made explicit statements to the contrary.  For example, in its August 27, 2010 letter, Colony stated its position was "*not a declination of coverage*, but rather a rejection of Fleet's proposed form of allocation."  Letter at 4 (emphasis added).  Similarly, the first sentence of Colony's March 7, 2011 letter stated, "[t]he purpose of this letter is to confirm that Colony Specialty Insurance Company *has not issued a blanket denial of coverage* in connection with the Canadian claims."  Letter at 1 (emphasis added).  And in its May 15, 2012 letter, Colony wrote: "while Colony has rejected aspects of Fleet's allocation scheme (as directly inconsistent with the Colony policy), *Colony has not denied coverage for these claims*."  Letter at 5 (emphasis added).  Indeed, even in its recent interrogatory response, Colony "[does] not . . . preclude the possibility that some Canadian claim(s) could be covered."

Colony asserts that, for purposes of analysis under *Boone*, it took an "adverse coverage position" on July 9, 2010.  But Colony has repeatedly stated since that time it has *not* declined coverage, and *Boone* states very clearly that Fleet "is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage that were created prior to the denial of coverage."  *Boone*, 744 N.E.2d at 158 (emphasis added).  Colony's assertion of an "adverse coverage position" is clearly not equivalent to a "denial of coverage," the precise wording for which Colony surely knows.  Thus, it is unclear what date the Court should use for the "cut-off" regarding discovery of Colony's claims file materials.

Courts have ruled that, if "there was no formal, written denial of claim, [then] the Court must first

9

determine the appropriate date upon which the *Boone* exception arose" – that is, "it is reasonable for a

court to *construct* a date of denial for purposes of determining the scope of the *Boone* exception." *Chubb*

*Custom Ins. Co. v. Grange Mut. Cas. Co.*, 2012 WL 1340369 at *4 (S.D. Ohio April 17, 2012) (emphasis

added); *see also Scotts Co. v. Liberty Mut. Ins. Co.*, 2007 WL 1500899 at *4 (S.D. Ohio May 18, 2007)

(ruling that the scope of the *Boone* exception is dependant upon the unique facts of each case).  In *Chubb*,

where the parties also traded letters containing no clear denial of coverage, the court concluded "the only

reasonable date to use as a constructive denial date is . . . the date that Chubb actually filed this action."

2012 WL 1340369 at *5.  The analogy in this case would be the date that Colony filed its answer to Fleet's

complaint, on June 24, 2011.[6]  Accordingly, the Court holds that Colony must produce to Fleet those

documents it has withheld on the basis of attorney-client privilege that are dated before June 24, 2011.[7]

IV.

---

[6] Fleet filed its complaint in this case on February 22, 2011.  Colony did not file an answer to this complaint, instead filing a motion to dismiss for lack of jurisdiction, which it later withdrew.  Fleet then filed a first amended complaint on June 16, 2011, and Colony filed its answer to this pleading on June 24, 2011.  It was at this juncture that the dispute was fully joined.

Fleet later filed a second amended complaint on August 1, 2012, and Colony answered this pleading on August 21, 2012.  Fleet contends Colony "constructively denied coverage" on this latter date.  Reply brief at 9.  The Court concludes, however, that the constructive denial of coverage occurred earlier when Colony answered the *first* amended complaint, not when it answered the *second* amended complaint.

[7] Colony asserts that, if the Court does apply *Boone* and orders production of attorney-client privileged documents – as it has now done – "the proper course of action would be to bifurcate and stay Fleet's bad faith claim until Fleet's breach of contract claim has been resolved."  Brief at 1.  The case law cited by Colony (as well as Fed. R. Civ. P. 42(b)) makes clear that a court *may* bifurcate in these circumstances, not that it must.  *See Boone*, 744 N.E.2d at 158; *Ferro Corp. v . Continental Cas. Co.*, 2008 WL 5705575 at *2 (N.D. Ohio Jan. 7, 2008).  Further, when "deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation."  *In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir. 1988).  "It is the interest of efficient judicial administration that is to be controlling, rather than the wishes of the parties."  *Id.*  The Court concludes the efficient administration of justice is best served by one trial addressing all of Fleet's claims.  Accordingly, the Court declines Colony's suggestion of bifurcation.

In addition to withholding documents on the basis of attorney-client privilege, Colony has also asserted the work product doctrine as a basis for non-production.  Whereas State law governs analysis of attorney-client privilege, federal common law governs the scope of the work product doctrine.  *See Scotts*, 2007 WL 1500899 at *3 ("the scope of the protection of the [work product] doctrine is unquestionably a matter of federal procedural law even in a diversity action"); *Zigler v. Allstate Ins. Co.*, 2007 WL 1087607 at *2-3 (N.D. Ohio April 9, 2007) (applying the *Boone* exception to documents withheld under the attorney-client privilege and federal law to documents withheld under the work product doctrine).

Colony has requested the Court review in camera those documents withheld pursuant to the work product doctrine.  This is "a procedure that is apparently preferred by Ohio courts."  *Scott*, 2007 WL 1500899 at *5; *see Zigler*, 2007 WL 1087607 at *2-3 (performing an in camera review of documents withheld pursuant to the work product doctrine, and discussing the parameters of the doctrine).  The Court will accede to Colony's request.  Accordingly, the Court orders Colony to produce to the Special Master those documents withheld pursuant to the work product doctrine.  The Special Master will review those documents and issue a Report regarding the propriety of their non-production to Fleet.

V.

The Court applies the conclusions it reached above as follows.  Attached to this opinion is a copy of Colony's privilege log.  Documents that Colony has withheld  based *only* on attorney-client privilege, and which are dated before June 24, 2011, are marked with the letter "P" – Colony must produce these documents to Fleet.  Documents that Colony has withheld based *also* on the work product doctrine, and which are dated before June 24, 2011, are marked with the letter "C" – Colony must produce these documents to the Special Master for in camera review.  Finally, documents that Colony has withheld (a) because they are not responsive, or (b) based on attorney-client privilege, and which are dated after June 24, 2011, are marked with the letter "N" – Colony is not required to produce these documents.

**IT IS SO ORDERED.**

/s/ Dan Aaron Polster
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**DATED**: December 21, 2012