11cv0375e-ord(reconsider).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| C.B. FLEET COMPANY, INC., | : | |
| Plaintiff, | : | |
| | : | Case No. 1:11-CV-0375 |
| v. | : | |
| | : | |
| COLONY SPECIALTY INSURANCE CO., | : | JUDGE DAN AARON POLSTER |
| | : | |
| Defendant | : | **MEMORANDUM AND ORDER** |

On December 21, 2012, the Court entered an Order granting in part and denying in part a motion filed by plaintiff C.B. Fleet Company ("Fleet") seeking to compel defendant Colony Specialty Insurance Company ("Colony") to produce certain documents. *See* docket no. 48 ("*Production Order*"). Thereafter, Colony filed a motion for reconsideration (docket no. 49), asking the Court to modify certain aspects of its *Production Order*. For the reasons and to the extent stated below, Colony's motion for reconsideration is **GRANTED IN PART AND DENIED IN PART**.

I.

In its *Production Order*, the Court concluded Ohio law applies to the question of attorney-client privilege in this case. *See Production Order* at 3-8. Although Colony disagrees with the Court's analysis, Colony does not ask the Court to reconsider this conclusion.

The Court then applied *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001), which holds that, "in an action alleging bad faith denial of insurance coverage, the insured is entitled to discover claims file materials containing attorney-client communications related to the issue of coverage *that were created*

*prior to the denial of coverage.*" *Production Order* at 8 (quoting *Boone*, 744 N.E.2d at 158 (emphasis added)). Specifically, the Court examined the facts in this case to determine when Colony denied coverage for the Canadian claims at issue, in order to rule which documents Colony had to produce. The Court found that: (1) Colony never clearly and explicitly stated to Fleet it denied coverage for the Canadian claims – to the contrary, Colony stated repeatedly it did *not* deny coverage, *Production Order* at 8-9; (2) because there was "no formal, written denial" of coverage, the Court had to "construct a date of denial for purposes of determining the scope of the *Boone* exception," *id.* at 9-10 (quoting *Chubb Custom Ins. Co. v. Grange Mut. Cas. Co.*, 2012 WL 1340369 at *4 (S.D. Ohio April 17, 2012)); and (3) the constructive denial-of-coverage date was June 24, 2011, which is the date Colony filed its first responsive pleading, *Production Order* at 10. It is this conclusion that Colony asks the Court to reconsider. Colony insists the denial-of-coverage date should instead be July 30, 2010.

The Court declines Colony's request for two reasons. First, Colony's motion does not present any intervening change of controlling law, any new evidence, or any suggestion that a correction is needed to avoid clear error or prevent manifest injustice – at least one of which is required before a court will reconsider an interlocutory order. *Louisville/Jefferson County Metro Government v. Hotels.com*, 590 F.3d 381, 389 (6th Cir. 2009). Indeed, Colony made the exact same argument in response to Fleet's original motion to compel,[1] and a request for "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004); *see Sunarto v. Mukasey*, 306 Fed. Appx. 957, 961 (6th Cir. Jan. 15, 2009) (same).

More important, Colony's "clarification" of the facts surrounding when and whether it denied

---

[1] *See* Colony sur-reply brief (docket no. 45) at 14-15 (asserting Colony "declined [Fleet's] coverage demand in July of 2010").

2

coverage does not persuade the Court that its conclusion in the *Production Order* was incorrect. Colony notes that, in *Boone*, the dispute was whether a *single* claim was covered under the insurance policy; in this case, however, the dispute is whether a *host* of claims that are part of a Canadian class action lawsuit filed in October of 2007, known as the "*Quinton* matter," are covered under the policy.[2] Colony asserts the Court ignored this difference, leading to an improper conclusion regarding when and whether Colony declined coverage. But examination of the claims at issue and Colony's coverage statements shows this assertion has no basis.

Colony's insurance policy provided coverage between August 1, 2006 and July 31, 2008 for injuries caused by ingestion of Fleet Phosphosoda.[3] Some of the claims made by plaintiffs in the *Quinton* matter related to ingestions that post-dated July 31, 2008. In addition, many of the claims made by plaintiffs in the *Quinton* matter were for ingestions that occurred during the policy period – that is, between August 1, 2006 and July 31, 2008 – but the claim was not actually *asserted* by the plaintiff until after July 31, 2008.[4] From the beginning of the *Quinton* matter, then, two essential coverage issues were whether Colony's policy covered claims: (1) for ingestions that post-dated July 31, 2008; and/or (2) were not asserted until after July 31, 2008.

---

[2] Although the *Quinton* matter was filed in October of 2007, many of the Canadian claimants did not actually ingest Fleet Phosphosoda until after that date and, accordingly, did not assert their individual claims until years later.

[3] There are actually two Colony policies at issue, one with a policy period running from August 1, 2006 to July 31, 2007, and one running from August 1, 2007 to July 31, 2008. There was no time gap in coverage. For ease of reference, the Court refers to these two policies as a single policy.

[4] The Court is not entirely sure of the data, but believes that: (1) 12 claimants in the *Quinton* matter had ingestion dates after August 1, 2006; (2) of these 12 claimants, nine had ingestion dates between August 1, 2006 and July 31, 2008, and three had ingestion dates after July 31, 2008; and (3) of the nine claimants who had ingestion dates between August 1, 2006 and July 31, 2008, only one claimant also *asserted* his claim between those dates. The date a claim is asserted is known as the "claims made date."

Apparently, Colony's position today is that, if a *Quinton* plaintiff's claim was asserted after July 31, 2008, then it is not covered under the Colony policy, even if the plaintiff's ingestion date was between August 1, 2006 and July 31, 2008.[5] Colony asserts it made this position clear on July 30, 2010, when it wrote to Fleet that it "does not believe that all claims with post 8/1/06 ingestion dates are covered by the [policy]."[6] But this written statement is simply not a clear declination of coverage – not of any *specific* claim, nor even a defined *category* of claims. Indeed, this statement does not even make clear whether Colony "believes" the policy does not cover claims of *ingestion* "post 8/1/06," or claims *asserted* "post 8/1/06."

Colony asserts in its motion for reconsideration that its July 30, 2010 statement is entirely consistent with its current coverage position, being that the policy does not cover claims asserted after July 31, 2008, regardless of when the ingestion occurred.[7] As noted in the Court's *Production Order*, however, Colony made statements *after* July 30, 2010 that are not consistent with this view. For example, on May 8 and May 15, 2012, Colony asked Fleet for explanations regarding a number of the Canadian claims asserted in the *Quinton* matter. Specifically, Colony asked why the Canadian claims administrator had assigned certain values to the claims, when medical records suggested different values. *All of the claims Colony asked about were asserted after July 31, 2008.* And in both the May 8 and May 15 letters, Colony

---

[5] *See* docket no. 50, Berk affid., exh. no. 10 (Oct. 17, 2012 deposition of D. Biondich). Biondich, who is Colony's 30(b)(6) designee, testified that if a plaintiff's claim was not asserted during the policy period of August 1, 2006 to July 31, 2008, it is not covered. Depo. at 98-99 (there is no coverage "based on the claims made date"). That said, the Court is not yet certain what all of the contours of Colony's coverage position will be at trial.

[6] *See* motion to reconsider (docket no. 49) at 2 (quoting docket no. 34, exh. 11 at 1) (July 30, 2010 email from W. Stewart to L. Berk).

[7] *See* motion to reconsider (docket no. 49) at 3 ("the position taken by Colony in July of 2010 is the precise coverage position that Colony takes in this litigation").

4

wrote: "Colony has not denied coverage for these claims."[8]

It is surely not consistent for Colony to: (a) contend it clearly declined coverage for a category of claims in July of 2010, but then (b) *later* question how claims within that category are being valued, and state is has *not* denied coverage for those claims. These statements and actions, taken together, do not amount to a "denial of coverage." *Boone*, 744 N.E.2d at 158. As the Court noted earlier, even if Colony's July 30, 2010 was an "assertion of an 'adverse coverage position,' [this] is clearly not equivalent to a 'denial of coverage,' the precise wording for which Colony surely knows." *Production Order* at 9.

In sum, Colony has given the Court no reason to reconsider or modify the critical date of denial of coverage for purposes of determining the scope of the *Boone* exception. As determined in the *Production Order*, that date is June 24, 2011.

II.

Colony next asks the Court to reconsider the substantive scope of documents it was ordered to produce to Fleet, and/or to produce to the Court for in camera review. Specifically, Colony notes the documents it has been ordered to produce relate to both the Canadian claims that are the subject of the *Quinton* matter, and also claims asserted by American plaintiffs in *In re Oral Sodium Phosphate Soln. Prods. Liab. Litig.*, MDL No. 2066. Colony asserts the coverage dispute in this case relates only to the

---

[8] *See* docket no. 50, Berk affid., exh. no. 7 (May 8, 2012 letter from W. Stewart to L. Berk, at 4), and exh. no. 8 (May 15, 2012 letter from W. Stewart to L. Berk, at 5).
   In the May 15, 2012 letter, Colony identified two claimants whose ingestions "occurred . . . after the expiration of the Colony policy." Letter at 4. Colony stated that these two "claims are expressly excluded under that policy." *Id.* Colony made no similar statement about other claimants whose ingestions occurred before the expiration of the Colony policy, but who asserted their claims after expiration. This shows two important things: (1) Colony knew how to phrase a simple and clear declination of coverage; and (2) Colony was *not* at that time clearly declining coverage for claims where the ingestion date was between August 1, 2006 and July 31, 2008, but the claim was asserted after July 31, 2008.

Canadian claims, so it should not be required to produce documents related to the *Oral Sodium* MDL.

As with the first aspect of Colony's motion, the Court must decline this request for two reasons. First, once again, Colony made an identical argument in its original motion.[9] Colony has not presented any intervening change of controlling law, new evidence, or suggestion that a correction is needed to avoid clear error or prevent manifest injustice.

Second, Colony's position is not well-taken on the merits. Fleet asserts Colony's coverage position in this dispute is "directly contrary" to the coverage position it took in the *Oral Sodium* MDL, even though the same insurance policy is at issue. Specifically, Fleet asserts Colony: (1) argued in the *Oral Sodium* MDL that claims made during the 08/09 policy year <u>should not</u> "relate back" to earlier policy years, such as the 07/08 policy year; but (2) argued that all *Quinton* class action claims <u>should</u> "relate back" to before the 07/08 policy year. Fleet asserts Colony made these opposite arguments because, in each case, the effect was to give it a basis for denying coverage under its 07/08 policy year. Thus, documents addressing Colony's coverage positions regarding American claims may well cast light on Fleet's assertion of bad faith in this case. Further, Colony and Fleet both knew during litigation of the American claims in the *Oral Sodium* MDL that coverage of Canadian claims was a related issue that would soon have to be fully addressed. The extent to which Colony's policy provides coverage for certain ingestion-dates and certain claims-made dates is an issue Colony considered holistically, and it is a false distinction to dichotomize documents addressing the same issue for Canadian claims and American claims.

In sum, Colony has given the Court no reason to reconsider or modify its decision regarding the substantive scope of documents it was ordered to produce. The Court will not modify any of Colony's production obligations based on whether the documents address Canadian claims or American claims.

---

[9] *See* Colony sur-reply brief (docket no. 45) at 14-15 (asserting document production should be limited to "communications pertaining to the <u>Canadian claims</u>") (emphasis in original).

III.

In its *Production Order,* the Court "decline[d] Colony's suggestion of bifurcation." *Production Order* at 10 n.7. Colony now states it never actually moved to bifurcate, it only "indicated [it] intended to seek bifurcation if the Court applied the *Boone* exception."[10] Accordingly, Colony asks permission to now file a full motion to bifurcate.

The Court stated in its *Production Order* its strong inclination against bifurcation in this case, and it remains so inclined. Nonetheless, the Court grants Colony permission to file a motion to bifurcate. Colony may only file this motion, however, **after**: (1) the Special Master and the Court have finished their in camera review of Colony's documents, and issued a ruling on which of these documents Colony must produce to Fleet; and (2) Colony has produced to Fleet all documents it has been ordered to produce.

IV.

As an exhibit to its *Production Order*, the Court attached a copy of Colony's privilege log, with each of the document entries marked with a letter. The Court explained:

> Documents that Colony has withheld based *only* on attorney-client privilege, and which are dated before June 24, 2011, are marked with the letter "P" – Colony must produce these documents to Fleet. Documents that Colony has withheld based *also* on the work product doctrine, and which are dated before June 24, 2011, are marked with the letter "C" – Colony must produce these documents to the Special Master for in camera review. Finally, documents that Colony has withheld (a) because they are not responsive, or (b) based on attorney-client privilege, and which are dated after June 24, 2011, are marked with the letter "N" – Colony is not required to produce these documents.

*Production Order* at 12.

In its motion for reconsideration, Colony stated it inadvertently failed to claim it was withholding

---

[10] Motion to reconsider (docket no. 49) at 5.

7

two documents, both dated before June 24, 2011, based on the work product doctrine.[11] Colony asked the Court to allow it to amend its privilege log, and further asked the Court to amend the *Production Order* accordingly, so these two documents are re-labeled from "P" to "C".

Fleet objected, arguing Colony had submitted no evidence of inadvertent error. The Court accepts Colony at its word, however; accordingly, the Court will review these two documents in camera, rather than order Colony to produce the documents immediately to Fleet. (Of course, the Court may yet order Colony to produce the documents, but only after in camera review.)

Finally, the Court undertook a *sua sponte* review of all of the "P" / "C" / "N" letter designations it assigned to the documents listed in Colony's privilege log, and concludes it is appropriate to modify the designations it assigned to two other documents from "P" to "C". Specifically, there are two documents that Colony drafted after this lawsuit was filed, but before Colony filed its first responsive pleading, which are being withheld based only on attorney-client privilege (and not also the work product doctrine).[12] While the Court remains convinced that the correct constructive denial-of-coverage date for purposes of determining the scope of the *Boone* exception was June 24, 2011, which is the date Colony filed its first responsive pleading, the Court concludes that in camera examination of these two documents, rather than immediate production of the documents to Fleet, is appropriate.

---

[11] The two documents are Bates-numbered: (1) 4047-51; and (2) 4444-45.

[12] The two documents, dated after February 22, 2011 and before June 24, 2011, are Bates-numbered: (1) 4342; and (2) 4361.

8

The Court attaches to this Order an amended exhibit with corrected letter designations for all documents listed on Colony's privilege log. Colony shall immediately produce documents to Fleet and to the Special Master accordingly.

**IT IS SO ORDERED.**

                                        /s/ Dan Aaron Polster
                                        **DAN AARON POLSTER**
                                        **UNITED STATES DISTRICT JUDGE**

**DATED**: January 15, 2013