11cv0375j-ord(badfaith).wpd

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| C.B. FLEET COMPANY, INC., | : | |
| Plaintiff, | : | |
| | : | Case No. 1:11-CV-0375 |
| v. | : | |
| | : | |
| COLONY SPECIALTY INSURANCE CO., | : | JUDGE DAN AARON POLSTER |
| | : | |
| Defendant | : | **MEMORANDUM AND ORDER** |

Plaintiff C.B. Fleet Company ("Fleet") brings this action against defendant Colony Specialty Insurance Company ("Colony") and asserts two claims: (1) breach of insurance policy contract; and (2) bad faith failure to honor its contractual obligations.[1] Currently pending are several motions related to Fleet's bad faith claim. For the reasons stated below, the Court rules on these motions as follows:

• Colony's motion for partial summary judgment seeking dismissal of bad faith claims; or, in the alternative, identification of bad faith claims to be tried (docket no. 63) is **DENIED.**

• Colony's motion to apply the substantive law of the Commonwealth of Virginia to the cause of action for bad faith (docket no. 65) is **DENIED, without prejudice.**

• Fleet's motion to strike portions of the declaration of William F. Stewart, which was submitted in connection with Colony's motion for partial summary judgment; or in the alternative, motion to disqualify Mr. Stewart as trial counsel (docket no. 72) is **GRANTED.**

• Colony's cross-motion to bifurcate the cause of action for bad faith; or alternatively, motion to disqualify Hunton and Williams as Fleet's trial counsel (docket no. 78) is **DENIED.**

• Fleet's motion to strike Colony's reply briefs; or, in the alternative, for leave to file sur-replies (docket no. 79) is **DENIED.**

---

[1] Fleet also seeks a declaration of Colony's duties under the insurance contract.

**I.	Background.**

Before addressing each motion listed above in detail, it is helpful to set out an overarching history. The undersigned presided over Multidistrict Litigation No. 2066, *In re: Oral Sodium Phosphate Prods. Liab. Litig.*, which involved claims by hundreds of American plaintiffs against Fleet for bodily injury caused by Fleet Phosphosoda. This MDL ultimately resolved in July of 2010 pursuant to a master settlement agreement, which required a number of Fleet's insurers to make payments into a settlement fund. Because Colony's position as an excess insurer in Fleet's "coverage tower" was as high as it was, Colony was not required to make any payment into the MDL settlement fund.

In addition to the claims of American plaintiffs aggregated in MDL No. 2066, Fleet also faced similar claims made by Canadian claimants. In December of 2010, Fleet also finalized a Canadian class action settlement, again requiring a number of Fleet's insurers to make payments into a settlement fund. These additional insurance payments reached higher into Fleet's coverage tower and implicated the Colony policy. The essence of the instant lawsuit is that Fleet asserts Colony is obligated to pay about $3 million into the Canadian settlement fund, but Colony has refused to do so. Fleet asserts Colony's refusal is not only a breach of Colony's insurance contract, but is also unreasonable and in bad faith.

To support its claim of bad faith, Fleet has pointed to evidence that both pre-dates and post-dates the filing of the instant lawsuit (which occurred on February 22, 2011). For example, Fleet recites pre-lawsuit evidence related to: (1) Colony's alleged failure to timely investigate the Canadian claims; and (2) Colony's alleged failure to timely tell Fleet its coverage position and its failure to provide coverage or settle. Fleet also recites post-lawsuit evidence related to: (3) Colony's alleged refusal to adhere to a 2011 "interim funding agreement," under which Colony would supply Fleet with a portion of the $3 million in Canadian settlement funds, and the parties would then negotiate final terms; and (4) Colony's allegedly contumacious conduct during this litigation. With its motion for partial summary judgment,

2

Colony argues the sum of Fleet's evidence is not sufficient to support Fleet's claim for bad faith.

In support of its partial summary judgment motion, Colony's trial counsel, William Stewart, submitted his own affidavit. This affidavit refers not only to numerous written communications but also to the following three oral, unrecorded conversations Mr. Stewart had with counsel for Fleet, Mr. Berk: (1) an April 16, 2010 (pre-lawsuit) conversation where Mr. Berk allegedly told Mr. Stewart that a tentative Canadian settlement had been negotiated and it looked like Colony would not have to supply any settlement funds; (2) an August 18, 2010 (pre-lawsuit) conversation where Mr. Berk allegedly told Mr. Stewart that a revised Canadian settlement had been negotiated, it now appeared Colony would have to contribute settlement funds, and Colony could either provide those funds or face a lawsuit; and (3) a September 1, 2011 (post-lawsuit) conversation that occurred during a mediation conference with the Court, where Mr. Stewart allegedly stated to Mr. Berk that Colony remained willing to enter into an interim funding agreement, which the parties had first discussed in writing in 2010.

In response to Colony's motion for partial summary judgment, Fleet's trial counsel, Lon Berk, similarly submitted his own affidavit. While this affidavit refers to numerous written communications received by and sent from Mr. Berk, including communications between Mr. Berk and Mr. Stewart, the affidavit does not refer to any oral, undocumented conversations between Mr. Berk and any other individual.

In its motion to strike or disqualify, Fleet argues that, among other things, Mr. Stewart must be disqualified as counsel if he intends to testify at trial about the three oral conversations, which are otherwise undocumented. In response, Colony argues Mr. Berk must similarly be disqualified, as many of the communications cited by Mr. Berk in his affidavit – even though they are all documented as letters or emails – were sent by or to Mr. Berk, himself, on Fleet's behalf.

The Court met with the parties on April 22, 2013 and discussed, among other things, the two

3

motions listed above that raise the subject of disqualification of trial counsel. The Court explained its view that, if Fleet intended to rely at trial upon post-litigation conduct to support its bad faith claim, then both Mr. Stewart and Mr. Berk would have to be disqualified as counsel, because it was their litigation conduct that was at issue – so they would each very likely have to be a witness in their client's own case-in-chief. If, however, Fleet chose not to rely upon post-litigation conduct to support its bad faith claim, then the two attorneys could continue as trial counsel.[2] The Court directed Fleet to submit a letter declaring whether Fleet intended to rely on any evidence post-dating the filing of the complaint in this case, or any testimony from Mr. Berk, to support its bad faith claim. Mr. Berk responded that Fleet "will not pursue its claim for bad faith litigation conduct" against Colony and "does not intend and has never intended to call me as a witness on any subject."[3] As explained below, this letter serves, to some extent, to moot the pending motions.

Mr. Stewart submitted a letter in response, but his letter did not answer directly the questions posed by the Court. As discussed below, having reviewed Mr. Stewart's response, the Court concludes Mr.

---

[2] At the Court's April 22, 2013 meeting with the parties, the Court also stated that, if Mr. Stewart intended to testify at trial regarding any of the three oral conversations mentioned in his affidavit, then he would be disqualified from serving as trial counsel, even though two of those conversations occurred before the inception of this litigation. More broadly, the Court ruled that no attorney who serves as trial counsel in this case may testify at trial on direct about any matter at issue. *See Omnicare, Inc. v. Provider Services, Inc.*, 2006 WL 414061 at *3 (N.D. Ohio Feb. 21, 2006) ("Because the roles of advocate and witness are inconsistent, it is generally inappropriate for a trial attorney to testify on behalf of the client."); Ohio Rule of Professional Conduct 3.7 ("[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness"); *Hood v. Midwest Sav. Bank*, 2001 WL 327723 at *3 (S.D. Ohio Mar. 22, 2001) (disqualifying an attorney who "is clearly a necessary witness for Plaintiff, as he is the only witness to [a critical] conversation, and had an active role in many of the transactions at issue. Plaintiff lacks evidence, aside from [the attorney's] testimony, to establish some of his claims.").

The Special Master later directed Colony to submit a letter to the Court declaring whether Colony intended to present Mr. Stewart's testimony at trial regarding the three oral conversations, or any other matter.

[3] Letter from Lon Berk to Judge Dan Aaron Polster at 1 (Apr. 29, 2013). Mr. Berk also wrote that Fleet "does not intend to introduce [at trial evidence of] any undocumented communication I had with any individual person." *Id.*

Stewart has effectively stated he intends to testify in Colony's case-in-chief.

The Court now addresses each motion, in turn.

## II.     Colony's Motion for Partial Summary Judgment.

With its motion for partial summary judgment, Colony asks the Court to either: (a) enter judgment as a matter of law on Fleet's bad faith claim, in its entirety; or (b) rule on the scope of the bad faith claim that Fleet is allowed to pursue. With regard to the second alternative, Colony observes (as noted above) that Fleet relies on four different categories of evidence of Colony's behavior to support its bad faith claim: (1) Colony's alleged failure to timely investigate the Canadian claims; (2) Colony's alleged failure to timely tell Fleet its coverage position, and its failure to provide coverage or settle; (3) Colony's alleged refusal to adhere to a 2011 "interim funding agreement," under which Colony would supply Fleet with a portion of the $3 million in Canadian settlement funds; and (4) Colony's allegedly vexatious conduct during this litigation. The first two categories of conduct pre-date this lawsuit, while the second two categories of conduct post-date this lawsuit.

Colony asserts that, if the Court does not grant summary judgment on the bad faith claim in its entirety, the Court should still hold that some of these categories cannot support a claim for bad faith, as a matter of law. For example, regarding category four, Colony argues that "post-litigation conduct by counsel generally does not – as matter of law – support a claim of bad faith against an insurer." Motion at 28 (quoting *Helms v. Nationwide Ins. Co. of Am.*, 280 F.R.D. 354, 362 (S.D. Ohio 2012). Colony argues the correct tool to address vexatious litigation conduct by an insurance company is a motion for sanctions pursuant to Fed. R. Civ. P. 11, and not a claim for bad faith. Similarly, regarding category three, Colony argues the appropriate mechanism for Fleet to address Colony's alleged breach of a 2011 interim funding agreement is a claim for breach of contract, not a claim for bad faith.

In light of Mr. Berk's statement that Fleet will not rely on Colony's litigation conduct to support its bad faith claim, however, Colony's motion for partial summary judgment has been made partly moot. Specifically, by virtue of Mr. Berk's statement, Fleet has conceded it will not rely on evidentiary categories three and four above to support its bad faith claim. Rather, Fleet will rely only upon categories one and two, along with other evidence of Colony's pre-lawsuit actions, to support its bad faith claim.

Thus, the question now posed by Colony's motion for partial summary judgment is whether Colony is entitled to judgment as a matter of law on Fleet's claim that Colony engaged in bad faith by: (a) failing to timely investigate the Canadian claims; and/or (b) failing to timely tell Fleet its coverage position, and failing to actually provide coverage or settle.

The Court has examined the parties' arguments and factual recitations and concludes Colony is not entitled to summary judgment on, or any further narrowing of, Fleet's claim for bad faith. The parties are not in agreement regarding the "undisputed" facts, and certainly are not in agreement regarding the permissible inferences to be drawn from those "undisputed" facts. Further, on the record to date, a reasonable jury could examine all the evidence and conclude Colony's actions and inactions were taken in bad faith. Put simply, there remain genuine issues of material fact surrounding Fleet's claim for bad

faith, and resolution of this claim requires submission of the evidence to a jury.[4] Accordingly, Colony's motion for partial summary judgment on Fleet's bad faith claim is denied.

### III. Fleet's Motion to Strike Portions of Mr. Stewart's Declaration, or to Disqualify Mr. Stewart; Colony's Cross-motion to Bifurcate, or to Disqualify Hunton and Williams.

#### A. Disqualification.

Fleet has chosen not to rely on Colony's post-litigation conduct to support its bad faith claim, which would have required Mr. Berk to testify. Further, Mr. Berk has assured the Court that Fleet has no intention of adducing at trial, in its case-in-chief: (1) any testimony from Mr. Berk, nor (2) any evidence of undocumented communications (e.g., oral conversations not memorialized in a document) that Mr. Berk

---

[4] As discussed below, the question of bad faith is decided by a *jury* under Ohio law and by the *Court* under Virginia law. Regardless of which law applies, the Court concludes Colony is not entitled *at this juncture, on the current evidentiary record*, to judgment as a matter of law on Fleet's bad faith claim.

Further, the Court squarely rejects Colony's continued protestations that the Court should limit or narrow the scope of Fleet's bad faith claim because Fleet did not tell Colony all of its bases for that claim, or because the bases have changed and Colony is now surprised. As Fleet makes very clear in its May 2, 2013 letter to the Court, Colony has long known the various sub-issues encompassed by Fleet's bad faith claim, and Colony cannot credibly assert surprise regarding the variety of actions and inactions by Colony that Fleet says support its bad faith claim. These sub-issues include not only alleged refusal of coverage, but also alleged refusal to negotiate, alleged failure to investigate, alleged changes in coverage position, and so on; Fleet has repeatedly recited these sub-issues to Colony in the context of discovery motions, choice of law motions, and the motion for partial summary judgment (not to mention informally, during conferences with the Court). Colony's argument that Fleet did not explicitly plead all of these sub-issues, in contravention of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombley,* 550 U.S. 544 (2007), is far too little, far too late, especially because Colony has not moved to dismiss. Indeed, given what the history of this case shows Colony actually knew and when it knew it, the Court would grant a motion from Fleet to amend before a motion from Colony to dismiss – which may be why Colony has not actually so moved. *Cf.* Fed. R. Civ. P. 12(b) and 15(b). Ultimately, Colony "doth protest too much" that Fleet has not revealed the various bases for its bad faith claim; these protestations are largely empty and cannot and do not work to protect Colony from facing the full scope of Fleet's claim at trial.

had with any individual. Thus, there is no basis to disqualify Mr. Berk or his law firm.[5]

Colony asserts Mr. Berk and his law firm must still be disqualified because Mr. Berk's pre-litigation conduct remains central to the case. Colony notes, for example, that pre-lawsuit communications between Colony and Fleet regarding whether the Canadian claims were covered, and the terms of settlement of the Canadian class action (and their implication to Colony), often came in the form of letters and emails to and from Mr. Berk. The use of this evidence by the parties, however, does not require Mr. Berk to testify at trial; both Fleet and Colony can introduce these documents without requiring the attorneys to testify.[6] In sum, given Mr. Berk's representations, the motion to disqualify him and his firm as trial counsel is denied.

As noted earlier, the Court stated to Colony's counsel, Mr. Stewart, that he could not testify at trial regarding the three undocumented, oral conversations he had with Mr. Berk. Thus, Mr. Stewart had a choice of: (1) testifying and not serving as trial counsel, or (2) serving as trial counsel and not testifying.

---

[5] In its motion, Colony cites *Reed Elsevier, Inc. v. Thelaw.Net Corp.*, 197 F. Supp.2d 1025 (S.D. Ohio 2002), for the proposition that disqualification of Mr. Berk would require disqualification of his entire law firm, Hunton & Williams. This argument is moot, given that Mr. Berk is not disqualified, but the argument is also incorrect. *Reed Elsevier* "held that, when one lawyer is disqualified under [Ohio Disciplinary Rule] 5–102(A), because he will testify as a witness, his entire law firm and all other lawyers in it must also be disqualified." *Id.* at 1027. Ohio Disciplinary Rule 5-102 has been superseded, however, by Ohio Rule of Professional Conduct 3.7, which states that a "lawyer *may* act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or 1.9" (emphasis added). Rules 1.7 and 1.9 address conflicts of interest arising from representation of current and former clients, which circumstances are not at issue here. Thus, even if Mr. Berk had to be disqualified, his law firm would not.

[6] Under Rule 3.7, a lawyer "may be disqualified from representing his client only when it is likely that the lawyer will be a 'necessary' witness. * * * [T]he necessity requirement is met when it is demonstrated that 'the proposed testimony is relevant, material, and unobtainable elsewhere.'" *Brown v. Spectrum Networks, Inc.*, 904 N.E.2d 576, 580 (Ohio Ct. App. 2008) (quoting ABA Annotated Model Rules of Professional Conduct 384 (5th ed. 2003). Colony has made no showing that testimony from Mr. Berk about documents he sent and received and meetings he attended would be material to its case *and unobtainable elsewhere*. As noted, Fleet will not call Mr. Berk in its case-in-chief. Colony's suggests it may choose to call Mr. Berk to testify, but Colony has made no showing such testimony is necessary, especially if Mr. Stewart testifies himself.

The Court directed Mr. Stewart to state his choice,[7] but he did not do so in his first letter to the Court. Rather, Mr. Stewart repeated arguments the Court had earlier rejected, asserting Mr. Berk must be disqualified even if Fleet promised it would *not* call Mr. Berk to testify in its case-in-chief and would *not* rely on post-litigation conduct.[8] In a subsequent letter, Mr. Stewart took the same approach, but finally stated: "If the Court permits Fleet to stray from the pleadings in this matter, and put the conduct of Colony's counsel and Fleet's Counsel at issue, Colony intends to call Mr. Stewart as a witness on these issues . . . ."[9]

Notwithstanding Mr. Stewart's mischaracterization of what the Court has "permitted," this Order makes clear that Colony's motion to "narrow" Fleet's bad faith claim is denied. The Court can thus only assume Mr. Stewart has chosen to testify at trial, but will not so commit unequivocally until the Court has ruled on all of the other pending motions.

Accordingly, the Court now rules as follows. Mr. Stewart is disqualified as trial counsel for Colony, unless he submits a letter to the Court within 48 hours of the publication of this Order and states Colony will *not* offer at trial evidence of any undocumented communications (e.g., oral conversations not memorialized in a document) Mr. Stewart had with any individual.

**B.  Bifurcation**

---

[7] The Special Master directed Mr. Stewart to submit a letter to the Court "indicating whether Colony intends to present any of the following types of evidence at trial: (1) any undocumented communications (e.g., oral conversations not memorialized in a document) [Mr. Stewart] had with any individual; or (2) any testimony by [Mr. Stewart] on any subject. The parties understand that, as Judge Polster stated, if Colony does intend to present any such evidence, [Mr. Stewart] will be disqualified as trial counsel." Email from Special Master Cohen to Counsel (April 25, 2013).

[8] *See* letter from William Stewart to the undersigned at 1 (May 1, 2013) (arguing "Mr. Berk will [still] be a central witness in this case," but not stating whether Mr. Stewart intended to testify).

[9] Letter from William Stewart to the undersigned at 1 (May 2, 2013)

9

Turning to the question of bifurcation, Colony asserts it will suffer prejudice if the jury's consideration of Fleet's breach of contract claim is "tainted" by having seen documents relevant only to Fleet's bad faith claim. But virtually all of the documents Fleet will use to support its bad faith claim are also relevant to the breach of contract claim. The questions of (a) whether coverage for the Canadian claims exists under the insurance policy and (b) whether Colony had a reasonable, good-faith basis for refusing to provide coverage or settlement payments for those same claims, are closely bound up.

"The ultimate decision to grant or deny bifurcation is left to the sound discretion of the trial court." *Patel Family Trust v. AMCO Ins. Co.*, 2012 WL 2883726 at *1 (S.D. Ohio July 13, 2012) (citing *Saxion v. Titan–C–Mfg*, Inc., 86 F.3d 553, 556 (6th Cir. 1996)).[10] "[T]he general rule [is] that disputes in federal court should be resolved in a single proceeding." *Id.* at *2. In determining whether a phased trial is appropriate, the court should consider several factors, including "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Id.* (quoting *Wilson v. Morgan*, 477 F.3d 326, 329 (6th Cir. 2007)).

Earlier in this case, the Court declined Colony's suggestion of bifurcation, concluding "the efficient administration of justice is best served by one trial addressing all of Fleet's claims." *Boone Order*, docket no. 48 at 10 n.7. The Court later granted Colony's request to file a formal motion to bifurcate, in order to set out more fully its arguments therefor. *See* docket no. 52 at 7. In its formal motion, however, Colony has not shown it would suffer any real prejudice if all of Fleet's claims are tried together. It remains true that bifurcation would be inconvenient and uneconomical for the parties, the Court, and the jurors, and a single trial would best serve the "efficient administration of justice." *In re Bendectin Litig.*, 857 F.2d 290,

---

[10] The *Patel* court also noted that, while Ohio tort reform statute O.R.C. §2315.21(B)(1) requires bifurcation of the presentation of evidence of compensatory damages and punitive damages in Ohio state court, numerous cases have held §2315.21(B) is "entirely irrelevant to the issue of bifurcation [in federal court] because bifurcation is a procedural matter governed by federal law."

10

307 (6th Cir. 1988). Accordingly, Colony's motion for bifurcation is denied.

**IV.     Colony's Motion to Apply Virginia Law to Fleet's Bad Faith Claim.**

Earlier in this case, the Court had to determine which State's law should apply to the question of whether attorney-client privilege protected Colony from having to produce certain documents to Fleet in discovery. *See* "*Boone Order*" at docket no. 48 (granting in part Fleet's motion to compel).[11] Fleet asserted Ohio law applied to this question, while Colony asserted the Court must apply the law of either Georgia or Pennsylvania. The Court concluded Fleet was correct and applied Ohio law.

Colony now asks the Court to conclude that Virginia law applies to Fleet's bad faith claim. Fleet again asserts Ohio law applies. As an initial matter, the Court observes that its earlier determination that Ohio law applies when determining the scope of attorney-client privilege does not automatically foreclose Colony's current position. This is because Ohio apparently recognizes a principle known as "dépeçage," which holds that different issues within a single case may be governed by the laws of different States. *See Mayse v. Watson*, 1985 WL 7613 (Ohio Ct. App. Sep. 27, 1985) (observing that "appellants have failed to take notice of numerous [non-Ohio] cases which have applied the concept of dépeçage," but not actually applying dépeçage); *Sirlouis v. Four Winds Intern. Corp.*, 2012 WL 1068709 at *4 n.2 (N.D. Ohio Mar. 29, 2012) ("Ohio law recognizes the doctrine of 'dépeçage' which provides for the application of different states' laws to different claims.") (citing *Byers v. Lincoln Elec. Co.*, 607 F.Supp.2d 840, 846 n.16 (N.D.

---

[11] *See also* Order at docket no. 59 (discussing amendments to the *Boone Order*).

Ohio 2009)).[12]

While Restatement (Second) of Conflicts of Law §139 applies to determine which State's law governs attorney-client privilege, *see* docket no. 48 at 3, it is §145 that applies to determine which State's law governs Fleet's substantive bad faith claim.[13] And §145 lists different factors for a Court's consideration than §139 when undertaking a choice-of-law analysis. Specifically, under §145, the factors to be considered in a choice of law analysis include "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under section 6 which the court may deem relevant to the litigation.  All of these factors are to be evaluated according to their relative importance to the case." *Morgan*, 474 N.E.2d at 289 (citing §145).

As a threshold matter, the Court notes there is reason for a conflicts-of-laws analysis because the laws of Virginia and Ohio regarding bad faith are meaningfully different. *See Millipore Corp. v. Travelers Indem. Corp.*, 115 F.3d 21, 29 (1st Cir. 1997) ("The first step in performing a choice of law analysis is to determine whether there is a conflict between the substantive laws of the interested jurisdictions."). The

---

[12] A careful reading of *Byers* and *Mayse* reveals that, *Sirlouis* notwithstanding, no Ohio state court has ever explicitly adopted the doctrine of dépeçage.  Nonetheless, this Court's "*Erie* guess" is that the Ohio Supreme Court would likely do so.  In *Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286, 288 (Ohio 1984), the Ohio Supreme Court adopted "the Restatement of the Law of Conflicts approach" and cited §145. Comment d to that section makes clear that each issue in a case "is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states."  If Ohio state courts adhere to §145, comment d, then they would recognize dépeçage. This still leaves unanswered, however, the exact scope of such recognition.  *Cf. Byers*, 607 F.Supp.2d at 846 n.16 (noting that, while Indiana courts recognize dépeçage, they will make separate choice-of-law determinations for different *counts* and different *defendants*, but not different issues within those counts).

[13] Colony states that §146 governs Fleet's bad faith claim, but §146 applies to actions "for personal injury."  Section 145 sets out the "general principle" applicable to torts.  Fleet's bad faith claim, of course, is not an action for personal injury.

12

most meaningful differences may be summarized as follows.

### Virginia Law on Bad Faith

In Virginia, the consequences of an insurer's bad faith are regulated by statute. Specifically, Va. Code §38.2-209(A) states, in pertinent part:

> in any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy . . . or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

Courts have repeatedly held that "[s]ection 38.2-209 does not create an independent cause of action." *Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F.Supp.2d 630, 654 (E.D. Va. 2009). Rather, the statute defines what relief is available when an insurer acts in bad faith – that relief being only costs and reasonable attorney fees – and "a party may seek relief under Section 38.2–209 only after a judgment is entered against the insurer." *Id.* The statute does not allow for recovery of exemplary or punitive damages. *See Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, 2008 WL 2857191 at *3 (E.D. Va. July 21, 2008) (Virginia does not 'allow [the imposition of] punitive damages when an insurer, in bad faith, delays or fails to satisfy a claim against its insured'") (quoting *Bettius & Sanderson, P.C. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 839 F.2d 1009, 1015 (Feb. 17, 1988).

The statute also makes clear that the question of whether an insured may recover costs and reasonable attorney fees because an insurer acted in bad faith is to be determined by the court, not the jury. *See CUNA Mut. Ins. Soc. v. Norman*, 375 S.E.2d 724, 726 (Va. 1989) (an "individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the trial judge after verdict

may award if it is determined by such trial judge in such case that the insurer has not in good faith either denied coverage or failed or refused to make payment to the insured under such policy"). When making this determination, the court should consider: "[1] whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; [2] whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; [3] whether the evidence discovered reasonably supports a denial of liability; [4] whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and [5] whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact." *Russell v. Nationwide Ins. Co.*, 2008 WL 4922356 at *4 (E.D. Va. Nov. 17, 2008) (quoting *CUNA*, 374 S.E.2d at 727). These five considerations are "non-exclusive factors in determining reasonableness; they are not . . . elements of a five-part test." *Id.*

**Ohio Law on Bad Faith**

In contrast to Virginia, Ohio allows an insured to bring against his insurance company a separate tort cause of action for bad faith. *See Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1319 (Ohio 1983) ("[B]ased on the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action against the insurer."). A breach of the duty of good faith may be shown in either "the refusal-to-settle type of action [or] the refusal-to-pay claim type of action." *Id.* at 1320; *see Pelleschi v. Aetna Cas. and Sur. Co.*, 1993 WL 164687 at *5 (Ohio Ct. App. Apr. 23, 1993) ("the Ohio Supreme Court has consistently held that an insurer has a duty to act in good faith while processing the claim of an insured").

Like Virginia, Ohio provides that an insured who prevails against his insurance company on a bad

14

faith claim may recover attorney fees as compensatory damages. *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 402 (Ohio 1994). In addition, however, "[i]nasmuch as the breach of the duty to act in good faith is tortious in nature," an insured may also recover punitive damages against an insurer who engaged in bad faith refusal to settle or pay claims. *Hoskins*, 452 N.E.2d at 1320. "[T]he elements for a recovery of punitive damages are different from those which must be satisfied to establish a breach of the duty of good faith; i.e., the former also requires a finding of actual malice." *Pelleschi*, 1993 WL 164687 at *5. Like any tort claim, whether an insurer breached its duty owed to the insured, and if so the type and amount of damages that should be imposed, are questions for the jury. *Zoppo*, 644 N.E.2d at 401-02.

### Postponement of Conflicts Analysis

Given there is a real conflict between the substantive laws of Ohio and Virginia regarding bad faith on the part of an insurer, one approach the Court could take would be to weigh the factors set out in Restatement (Second) of Conflicts of Law §139 and reach a conclusion *now* as to which State's law applies. The Court has concluded, however, it will take a different tack and postpone decision on which State's law applies until after trial. The two reasons for this postponement are that: (1) the issue may become moot; and (2) the record for review on appeal will be better served.

The Court's reasoning is as follows. Assuming Fleet's bad faith claim survives any Rule 50 motion that Colony may make at trial, the Court intends to instruct the jury on all of Fleet's claims using Ohio law.[14] If the jury returns a verdict in favor of Colony on Fleet's coverage claim, then the jury will not reach Fleet's bad faith claim, so the question of whether Ohio or Virginia law applies to the bad faith claim will be moot. Thus, there is no benefit to undertaking a conflicts-of-law analysis now.

---

[14] The parties have stated they agree there is no conflict of law regarding Fleet's claim for breach of insurance policy contract – Ohio and Virginia law regarding breach of contract are essentially the same.

If the jury does reach Fleet's bad faith claim, then the Court will have to address the conflicts-of-law question. If the Court concludes Ohio law applies, the jury's verdict on the bad faith claim will remain in place. If the Court concludes Virginia law applies, the Court can: (1) vacate the jury's verdict on the bad faith claim (and either ignore that verdict entirely or treat it as advisory); and (2) then reach its own conclusion regarding whether Colony acted in bad faith and, if so, the appropriate amount to award Fleet for recovery of costs and reasonable attorney fees.[15] Notably, this approach serves to make less likely the possibility of retrial after appeal. Specifically, if the Court concludes Virginia law applies and Fleet takes a successful appeal on this issue, this Court can simply reinstate the jury's Ohio law verdict, rather than retry some or all of the case.

In sum, the Court will instruct the jury on Fleet's bad faith claim using Ohio law, and will then undertake a conflicts-of-law analysis on the bad faith claim only if it becomes necessary. Accordingly, Colony's motion to apply Virginia law to Fleet's bad faith claim is denied without prejudice.

---

[15] It is worth noting the parties have not argued there is any difference between Virginia and Ohio law on insurer bad faith with regard to *what evidence is relevant or admissible* to show bad faith. Put differently, it does not appear the evidence showing whether an insurer acted in bad faith is different depending on application of Virginia or Ohio law. *Cf. Haghnazarian v. State Farm Mut. Ins. Co.*, 1990 WL 10030556 (Va. Cir. Ct. June 8, 1990) (under Virginia law, "[p]roof of bad faith does not require evidence of fraud, deceit, dishonesty, malice or ill will. Rather, an insurer acts in bad faith where it acts in furtherance of its own interest, with intentional disregard of the financial interest of the insured.") (citations and internal quotations marks omitted); *Pelleschi*, 1993 WL 164687 at *5 (noting that, under Ohio law, although a finding of actual malice is required to support recovery of punitive damages, malice is not a required element to show bad faith; "a breach of the insurer's good faith duty has been established when the evidence shows that the claim was intentionally refused 'where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) an intentional failure to determine whether there was any lawful basis for such refusal'") (quoting *Motorists Mut. Ins. Co. v. Said*, 590 N.E.2d 1228, 1236 (Ohio 1992)).

In any event, if there is a difference, the Court can ignore any evidence submitted to the jury under Ohio law if it is not relevant to the Court's determination under Virginia law.

**V.      Fleet's Motion to Strike Colony's Reply Briefs or for Leave to File Sur-Replies.**

Fleet asserts Colony submitted new evidence and arguments in various reply briefs, so either those reply briefs should be stricken, or Fleet should be allowed to file sur-reply briefs. The Court has received sufficient briefing on all issues presented, and has denied Colony's motions in any event. Accordingly, Fleet's motion related to briefing is denied.

**IT IS SO ORDERED.**

/s/ Dan Aaron Polster
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**DATED**: May 7, 2013